IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MILLARD GUTTER COMPANY, a corporation d/b/a MILLARD ROOFING AND GUTTER; GILLICK ENTERPRISES, INC.; and GROSS POINT HOLDINGS, LLC,<br><br>               Plaintiffs,<br><br>     vs.<br><br>DEPOSITORS INSURANCE COMPANY,<br><br>               Defendant. | **8:18CV23**<br><br><br>**MEMORANDUM AND ORDER REGARDING THE PARTIES' SECOND ROUND OF MOTIONS IN LIMINE** |

This case arising from an insurance claim for hail damage to the roof of a commercial building is before the Court on a second round of Motions in Limine in anticipation of trial set to begin on August 8, 2023. Defendant has filed four Motions in Limine, and Plaintiffs have filed three. The dispositions of the Motions are set out below.

## I.   INTRODUCTION

### A.  Factual Background

The factual background is well known to the parties in this case. The parties' stipulated facts in the Order on Final Pretrial Conference, Filing 110 at 1–2, provides sufficient summary for present purposes with only non-substantive editorial interpolations and adjustments by the Court. Plaintiffs Gross Point Holdings, LLC, (Gross Point) is the record owner of property located at 13255 Centech Road, Omaha, Nebraska 68138 (the Property). Gillick Enterprises, Inc., (Gillick) operates its business at the Property. Gillick and Gross Point were named insureds concerning the Property under a policy bearing policy number ACP CPPD 7215729129, issued under the name of defendant Depositors Insurance Company (Depositors) for the period of July 1, 2012, to July 1, 2013. Gillick and Gross Point submitted a claim for storm damage to their commercial buildings on the Property during the covered period. Plaintiff Millard Gutter Company is a general contractor

1

doing business in Nebraska, whose services include roof, gutter, and HVAC repairs. Gillick and Gross Point engaged Millard Gutter Company to undertake repairs at the Property. Gillick and Gross Point have assigned to Millard Gutter Company the right to proceeds under the policy up to Millard Gutter Company's unpaid charges.[1] For the sake of convenience, the Court will refer to Plaintiffs as a group as Millard Gutter.

At the Property, there are three main structures: a Truck Wash, a Refrigeration Building, and a Main Building. The Truck Wash has a metal roof, the Refrigeration Building has a TPO-style roof, and the Main Building has an EPDM-style rubber membrane roof, covered in river rock (ballast). The estimate of Mike Weber of Young and Associates dated 11/21/2017 shows the work Depositors has determined to be covered loss due to a covered cause of loss. The Court will refer to this estimate as the Weber Estimate. Millard Gutter disputes the scope and the amount of loss set forth in the Weber Estimate.

## B.  Procedural Background

The procedural background is also well known to the parties in this case. Thus, the following summary is sufficient. In its Complaint, Millard Gutter asserted that Depositors and its affiliate and then co-defendant Nationwide Insurance breached contractual obligations under the insurance policy by failing to pay the fair and reasonable costs to effectuate repairs of covered loss and to pay benefits due and owing under the applicable insurance policy. *See, e.g.*, Filing 1-3 at 7 (¶ 30). Millard Gutter also asserted that Nationwide and Depositors breached obligations of good faith and fair dealing by virtue of arbitrary and capricious delays and withholding of repair approval without reasonable basis. Filing 1-3 at 9 (¶ 40). Depositors and Nationwide denied Millard Gutter's claims and asserted various affirmative defenses. Filing 8.

---

[1] This sentence is drawn from the parties' Joint Proposed JI No. 1.03.

In a Memorandum and Order regarding the Parties' [First] Motions in Limine, Filing 108, the Court denied without prejudice to reassertion at trial Millard Gutter's Motion in Limine asking the Court to preclude any testimony or evidence, including from any of the Defendants' purported experts, on four topics, Filing 73, and denied Defendants' Motion in Limine to exclude the testimony of Millard Gutter's expert Carl Martin, Filing 79. *See* Filing 108 at 13.[2] In a Memorandum and Order Regarding the Parties' Cross-Motions for Partial Summary Judgment and Summary Judgment, the Court granted summary judgment to Depositors and Nationwide on Millard Gutter's claims against Nationwide and on Millard Gutter's first-party bad faith claim against Depositors. Filing 133 at 27.[3] Only the repair and replacement of the Main Building roof remains at issue in this litigation. Filing 133 at 14–15. This matter will proceed to trial only on Millard Gutter's claim of breach of contract against Depositors. Filing 133 at 28.

As mentioned above, this case is now before the Court on seven additional Motions in Limine, consisting of four by Depositors and three by Millard Gutter. The Court will consider these Motions in turn, beginning with Depositors' Motions.[4]

## II. LEGAL ANALYSIS

### A. Depositors' Motions in Limine

#### 1. *The Second Motion in Limine to Strike Witnesses*

The first Motion before the Court is Depositors' 2nd Motion in Limine and Motion to Strike Plaintiff's Witnesses. Filing 111. In this Motion, Depositors seeks an order precluding Millard Gutter from calling as a witness any person not previously identified by Millard Gutter in all

---

[2] This decision is also available on Westlaw at *Millard Gutter Co. v. Nationwide Ins.*, No. 8:18CV23, 2023 WL 4157246, at *4 (D. Neb. June 23, 2023). However, the Court will cite this ruling by docket number and docket page number.

[3] This decision is also available on Westlaw at *Millard Gutter Co. v. Nationwide Ins.*, No. 8:18CV23, 2023 WL 4684834 (D. Neb. July 21, 2023). However, the Court will also cite this ruling by docket number and docket page number.

[4] The witness lists in the Order on Final Pretrial Conference as amended by this Memorandum and Order will be controlling on witnesses who can be called at trial, along with any rulings made in this order.

3

Plaintiffs' Initial Disclosures or all Plaintiffs' discovery responses as a person having discoverable information of their claim. Filing 111 at 1. Depositors also seeks an order precluding Millard Gutter from calling as witnesses Tony Gillick, Robert Robinson, Pat Querry, Mike Herring, and Dave Hodges, and striking those persons from the list of persons Millard Gutter is allowed to call as witnesses at the time of trial, because these persons were not previously identified in any of Plaintiffs' Initial Disclosures or in any of Plaintiffs' discovery responses as persons having discoverable information on their claims. Filing 111 at 1–2.

### a. The Request for a "Blanket" Exclusion is Denied

To the extent Depositors seeks in advance of trial a "blanket" exclusion of any witness not previously disclosed by any Plaintiff, the Court declines to grant such an exclusion. As the Court explained in its prior ruling on Motions in Limine in this case,

> "Where a party fails to make a timely disclosure, [under Rule 26(a)], Federal Rule of Civil Procedure 37(c)(1) provides the district court with the authority to exclude the late-disclosed materials or to fashion a lesser penalty than total exclusion." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 771 (8th Cir. 2020). . . . Also, "Rule 37(c)(1) is applicable only when a party fails to comply with Rule 26(a) and then seeks to use the information on a motion, at a hearing, or at a trial." *Petrone v. Werner Enterprises, Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (*Petrone II*) (internal quotation marks and citation omitted). In other words, "Rule 37(c)(1) addresses what to do if a party fails to disclose information as required by Rule 26(a) and attempts to use that information on a motion, at a hearing, or at a trial." *Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 435 (8th Cir. 2019) (*Petrone I*) (emphasis in the original). Imposing a Rule 37(c) sanction before the proponent of the evidence attempts to use it in support of its position on a motion or at a hearing or trial is error. *Id.*

Filing 108 at 6–7. At this point, Millard Gutter has given no indication that it seeks to use at trial any witness not named in its list of witnesses in the Order on Final Pretrial Conference, Filing 110 at 4. Thus, the "trigger" for consideration of Rule 37(c) sanctions of exclusion or any lesser sanction as to any unlisted witness has not occurred. Should Millard Gutter offer at trial the testimony of a witness not previously disclosed, other than for impeachment, and should Depositors make a timely objection to the testimony of such a witness, the Court will consider the

4

appropriate sanction if any under Rule 37(c). The parties should expect, however, that the Court will not allow witnesses not listed in the Order on Final Pretrial Conference from testifying at trial. Thus, this part of Depositors' 2nd Motion in Limine is denied without prejudice to timely objections at trial to a previously undisclosed witness.

>   b.   Testimony from Tony Gillick, Querry, Herring, and Hodges
>        Will Not Be Excluded as Undisclosed Witnesses

On the other hand, Millard Gutter has indicated that it seeks to use at trial testimony from Tony Gillick, Robert Robinson, Pat Querry, Mike Herring, and Dave Hodges by naming them in its list of witnesses in the Order on Final Pretrial Conference, Filing 110 at 4. Depositors contends that these witnesses were not previously disclosed as required by Rule 26. Filing 112 at 1. As to Tony Gillick, Pat Querry, Mike Herring, and David Hodges, Depositors argues that Millard Gutter has not offered any justifiable excuse for the lack of timely disclosure or demonstrated that the lack of timely disclosure is harmless. Filing 112 at 3. Millard Gutter contends that Depositors is not suffering any undue surprise that Millard Gutter is calling these four of the five challenged witnesses. Filing 137 at 1.

Millard Gutter maintains that Tony Gillick is one of the principals of Gillick Enterprises, that he was identified in the deposition testimony of Anthony Gillick as the CEO of Gillick Enterprises at the relevant times, and that he will testify that he had been on the roof and observed damage. Filing 137 at 2. Millard Gutter points out that Depositors itself listed Pat Querry in its disclosures as someone it might use to support its claims or defenses because he has knowledge of the damage at issue. Filing 137 at 3. Millard Gutter contends that Mike Herring is also an individual that Depositors itself listed in its disclosures and that he is a party to emails produced during discovery. Filing 137 at 3. Millard Gutter argues that Dave Hodges visited the Property, inspected the HVAC system, concluded it needed to be replaced, and offered a bid that was not accepted and that was above what was ultimately charged. Filing 137 at 4. Millard Gutter also argues that

Hodges will be called to authenticate his communications and estimate, which were discussed in James Eggers's deposition. Filing 137 at 4.

Failure to identify these witnesses in Millard Gutter's disclosures was sloppy. The Court does not believe that reference to a person in the deposition of another, as is the case with Tony Gillick and Dave Hodges, is an adequate substitute for proper disclosure. Consequently, Depositors' 2nd Motion is granted as to exclusion of Tony Gillick and Dave Hodges as witnesses at trial. On the other hand, where Depositors itself listed Pat Querry and Mike Herring in its disclosures, Depositors cannot be heard to complain that it has inadequate notice of their likely testimony. Under the circumstances, the Court concludes that exclusion of Pat Querry and Mike Herring would be a disproportionate sanction, as would requiring pretrial depositions of these witnesses at Millard Gutter's expense or any other lesser sanction. *See Vogt*, 963 F.3d at 771 (explaining that Rule 37(c) authorizes exclusion or a lesser sanction as the court deems appropriate). This part of Depositors' 2nd Motion in Limine is denied as to Pat Querry and Mike Herring.

### c. Exclusion of Robert Robinson's Testimony Is Not Required

Depositors makes more specific and extensive arguments to exclude the testimony of Robert Robinson of a company called MWSS, Inc.—which apparently offered an estimate for some repairs in this case—based on failure to make disclosures for experts pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i), (C)(i), or (C)(ii). Filing 112 at 3–5. Depositors argues that, while Millard Gutter's Rule 30(b)(6) designee, James Eggers, was deposed about an estimate from MWSS, Inc., he did not know what the estimate was for, if Robinson still owned that company, whether that company was still in Cleveland, Missouri, whether it was even still in business or operating in Nebraska, whether MWSS provided any repair, or whether Robinson was still alive. Filing 112 at 4–5.

Millard Gutter responds that Mr. Robinson's company provided an estimate concerning replacement of the Truck Wash, but the Court granted summary judgment as to claims related to the Truck Wash, so Millard Gutter does not anticipate calling him at trial. Filing 137 at 2. Nevertheless, Millard Gutter also argues that Mr. Robinson's firm was mentioned in initial disclosures in April 2018 as a subcontractor whose employees would have relevant knowledge and that Robison was identified in expert disclosures in September 2018 as a fact witness who might provide testimony deemed expert in nature. Filing 137 at 2–3. Millard Gutter argues that Depositors made no effort to depose Mr. Robinson in the intervening years. Filing 137 at 3.

The Court finds that MWSS is identified in Plaintiffs' Initial Disclosures from April 2018 as a company whose employees may have knowledge regarding damage and proposed work to be performed by subcontractors. Filing 141 at 5. Robinson is identified in Plaintiffs' Joint Expert Witness Designation as a fact witness who may provide testimony that may be deemed expert in nature, as an employee of MWSS, which company is identified as providing estimates and repairing portions of the subject property. Filing 141 at 10. Depositors apparently never made any timely effort to obtain Robinson's deposition despite notice of his potential as a witness. Under these circumstances, the part of Depositors' 2nd Motion in Limine seeking to exclude testimony from Robert Robinson is denied.

d. Summary

Upon the foregoing, Depositors' 2nd Motion in Limine is granted as to Tony Gillick and Davoid Hodges, but denied as to Pat Querry, Mike Herring, and Robert Robinson. The denial as to Querry, Herring, and Robinson is without prejudice to timely objections at trial to a previously undisclosed witness and without prejudice to timely objections at trial should the testimony of these witnesses stray into areas or opinions that Depositors contends specifically required pretrial disclosure.

2. *The Third Motion in Limine to Prohibit Certain Testimony for Lack of Expert Disclosures*

In its 3rd Motion in Limine, Depositors seek an order excluding ten categories of evidence from James Eggers, Josh Roza, Carl Martin, Raul Mejia Rueda, Terry Gambrel, Gary Kropf, and Robert Robinson, or any other lay or expert witness, for lack of written disclosure or discovery responses barring them from offering opinions or testimony of an expert nature or on any of various topics. Filing 115. Depositors summarizes the ten categories of evidence as follows:

1. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) as to fair and reasonable charges of a contractor performing work in Omaha, Nebraska, including any testimony or evidence that Millard Gutter's invoices charges were fair and reasonable in amount as to the work performed.

2. Any testimony or evidence from and any of Plaintiffs' witnesses (lay or expert) as to the fairness, reasonableness or appropriateness of the scope of work and amount of money for each item of work, as set forth within the estimate prepared for Depositors Insurance Company by Young & Associates dated November 11, 2017.

3. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) as to the repairability of the roof at Gillick Enterprises, including but not limited to any repairability issues related to the repairs approved by the Defendants.

4. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) regarding Millard Gutter Company's contention proffered in recent briefing to the Court and recent Affidavits submitted with the briefing from Millard Gutter, from James Eggers and Carl Martin, P.E., that it was not possible to perform repairs [authorized by Depositors] without removal and replacement of the roof assembly, irrespective of whether or not particular areas of the roof had suffered direct physical loss"; or that as a result of "consequential damage" resulting from performing repairs approved by Depositors Insurance Company, that a total roof replacement for the Main Building was necessary; or any such opinions declaring that the approved repairs serve as a causation basis for a total roof replacement of the Main Building.

5. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) (a) contesting that all of the HVAC units could be repaired in accordance with the report from First Point Consulting, LLC; (b) that any HVAC unit needed to be replaced; or (c) that the repairs as recommended by First Point

Consulting, LLC, Grayco Roofing Consultants and Haag Engineering could not be performed for any reason to properly restore any said HVAC unit.

6. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) about any damages pertaining to any category of damages other than amounts of damages identified in Millard Gutter's initial estimate.

7. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert) about the appropriate measure of Actual Cash Value and /or Replacement Cost pertaining to Plaintiffs' claims for damages to any building insured under the policy of insurance issued by Depositors Insurance Company.

8. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert), specifically including James P. Eggers, about any of the subject matter identified in Plaintiffs' Joint Expert Witness Designation pertaining to James P. Eggers that is opinion and/or expert in nature.

9. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert), specifically including Josh Roza, about any of the subject matter identified in Plaintiffs' Joint Expert Witness Designation pertaining to Josh Roza that is opinion and/or expert in nature.

10. Any testimony or evidence from any of Plaintiffs' witnesses (lay or expert), specifically including Raul Mejia Rueda of Mejia Roofing, Terry Grambel or Gary Kropf of SOS Heating, or Robert Robinson of MWSS, Inc., that is opinion and/or expert in nature.

Filing 116 at 1–3.

Although this Motion addresses ten categories of evidence, Depositors offers two arguments for their exclusion. The Court will address those two arguments in turn after briefly addressing Martin's expert testimony.

a.   Martin's Testimony Is Limited to Opinions On Topics 3 and 4

The Court will first address Martin's expert opinion testimony. Depositors acknowledges that Martin and his opinions were disclosed, but Depositors argues that Martin does not opine on any facts related to the topics Depositors has identified. Filing 116 at 7. The Court has previously addressed the scope of Martin's expert opinion testimony and will address it again below in more detail in the Court's analysis of Depositors' Motion in Limine to Exclude Carl Martin as a Witness. As to the matters raised in Depositors' 3rd Motion in Limine, the Court's analysis in its prior ruling

9

on cross-motions for summary judgment shows that Martin's opinions on topics 3 and 4 were adequately disclosed. *See* Filing 133 at 11, 12, and 22. Millard Gutter again highlights Martin's testimony on those topics in its response to Depositors' 3rd Motion in Limine. *See* Filing 138 at 5–7, and 9. On the other hand, Millard Gutter does not identify any disclosure of Martin's opinions relating to the other eight topics identified in Depositors' 3rd Motion in Limine. Therefore, Depositors' 3rd Motion in Limine is granted as to Martin's opinions on topics 1–2 and 5–10, but that Motion is denied as to Martin's opinions on topics 3 and 4. What remains to be determined below is whether topics 1–2 and 5–10 required expert disclosures.

> b. Millard Gutter Failed to Make Some Required Expert Disclosures, But Depositors Has Suffered No Harm so Exclusion Is Unwarranted as to Some Topics

Depositors' first argument for exclusion of evidence on the ten topics is that Millard Gutter has never produced expert disclosures as to the witnesses identified by name that satisfy either Rule 26(a)(2)(B) or Rule 26(a)(2)(C). Filing 116 at 3. Depositors argues further that Millard Gutter never responded to discovery requests about the substance of the facts and opinions of these experts. Filing 116 at 3. Thus, Depositors contends the testimony of the named witnesses on any of the ten topics identified in its Motion is excludable pursuant to Federal Rules of Evidence 401, 402, 403, and Federal Rules of Civil Procedure 26(a)(2) and 37(c). Filing 116 at 4. Depositors relies on this Court's ruling on Millard Gutter's challenge to exclusion of Depositors' own experts' testimony on several topics to suggest that the topics identified in Depositors' Motion also require expert testimony and thus expert disclosures. Filing 116 at 4–6 (citing Filing 108).

Millard Gutter argues primarily that there is no undue surprise on Depositors' part that Millard Gutter will call any of the listed witnesses, because all were identified as persons with knowledge pertinent to the case. Filing 138 at 1. Millard Gutter also argues that none of the listed witnesses is a person who was retained or specially employed to provide expert testimony in the

case nor are any of the identified individuals persons whose duties as employees of parties regularly involve giving expert testimony. Filing 138 at 2. Millard Gutter also argues that Eggers, Roza, Mejia Reuda, Grambel, Kropf, and Robinson will each testify as to factual matters based upon their personal involvement in this case. Filing 138 at 2, 12. Millard suggests that contractors should be treated like treating physicians as to opinions developed during the course of work. Filing 138 at 10–11.

The Court finds that Eggers and Roza were not "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).[5] Thus, they were not required to provide written reports. On the other hand, disclosure for such witnesses had to include "the subject matter on which the witness is expected to present [expert] evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The Court finds the disclosure in the initial expert designations of Eggers's and Roza's opinions on the pertinent issues were slim. In Plaintiffs' Joint Expert Witness Designation, the disclosure as to Eggers states in pertinent part,

> Although not retained as an expert witness, Plaintiff reasonably anticipates that Mr. Eggers may provide testimony which may be deemed expert in nature based upon his specialized training, knowledge and experience in the exterior remodeling and construction industry. Mr. Eggers is anticipated to provide testimony that the estimate of the cost of repair and the billings prepared by Millard Roofing were fair, reasonable and necessary to repair damage created by a storm; that Plaintiffs performed all of their work obligations in a good and workmanlike manner and/or will have done so; that the repairs performed and to be performed were necessary and arising from a storm related loss, and that Plaintiff Millard Roofing conferred economic benefit upon the Defendant(s) by performing repairs Defendant(s) were obligated to cover under the policy of insurance issued to the property owner. Plaintiff anticipates that Mr. Eggers will further testify about the industry standards

---

[5] The Court will not consider Depositors' argument that expert reports were required from Eggers and Roza under Rule 26(a)(2)(B) because their duties as Millard Gutter's employees "regularly involve giving expert testimony" on the topics Millard Gutter identified in its Joint Expert Witness Designation, Filing 20. Filing 148 at 2–3. That argument was raised for the first time in Depositors' reply and raises a new basis for finding the disclosures inadequate. In its opening brief in support of this motion, Depositors identified the part of Rule 26(a)(2)(B) referring to employees whose duties "regularly involve giving expert testimony" but did not argue that Eggers and Roza were such employees. Filing 116 at 10. This Court, like the Eighth Circuit Court of Appeals, "generally does not consider arguments raised for the first time in a reply brief." *See United States v. Johnson*, 70 F.4th 1115, 1125 n.4 (8th Cir. 2023).

for assignment of insurance claims, the adjustment of such claims and the manner in which such claims are generally pursued and that Plaintiff's actions were consistent with industry standards. Plaintiff furthers anticipate that Mr. Eggers will testify regarding the losses incurred by Plaintiffs as a result of Defendant's breach of contract and wrongful conduct in failing to approve all necessary repairs.

Filing 20 at 1; Filing 113-14 at 1–2. The part of the disclosure for Josh Roza is essentially identical. Filing 20 at 2; *see also* Filing 113-14 at 2.

This disclosure identifies only very generally the subject matter of the opinions Eggers will offer in relation to topics 1, 3, 4, 8, and 9 and perhaps implies but does not clearly set out an opinion that replacement of the roof was necessary to repair covered damage. *See* Fed. R. Civ. P. 26(a)(2)(C)(i). Even assuming that disclosure of subject matter is adequate, the disclosure of pertinent facts is inadequate. *See* Fed. R. Civ. P. 26(2)(C)(ii). Millard Gutter's interrogatory answer on which Millard Gutter now relies reiterates that Eggers will opine that charges reflected in the itemized invoices that Millard Gutter provided to Gillick and Gross Point "are fair and reasonable and were necessary to repair damage at the insured premises." *See* Filing 113-1 at 2. Again, the pertinent part of the interrogatory response for Josh Roza is essentially identical. *See* Filing 113-1 3. This discovery response is likewise short on disclosure of pertinent facts on which Eggers (or Roza) would rely. *See* Fed. R. Civ. P. 26(2)(C)(ii).

In the circumstances of this case, the Court will consider whether exclusion or any other sanction is appropriate pursuant to Rule 37(c). Specifically, the Court will consider whether Depositors is actually surprised by Eggers's opinions, such as his opinions concerning repairability of the roof and any companion opinion that the repairs authorized by Depositors could not be performed without requiring replacement of the roof, irrespective of whether or not particular areas of the roof had suffered direct physical loss, resulting in consequential damages. As Millard Gutter contends, in Eggers's deposition, Eggers testified as to the need to replace the roof to accomplish the repairs authorized by Depositors. *See* Filing 83-4 at 338–339 (Eggers Depo. at 338:7–339:13).

Moreover, in response to Millard Gutter's First Motion in Limine, Depositors asserted that these topics go to "the very nature" of Millard's claims in this case, Filing 86 at 6, so it cannot be heard to complain that it is surprised that such opinions will be offered. Under the circumstances, the Court concludes that exclusion of Eggers's opinions addressing topics 1, 3, 4, 8, and 9 in this part of Depositors' 3rd Motion in Limine would be a disproportionate sanction, as would requiring another pretrial deposition of this witness at Millard Gutter's expense or any other lesser sanction. *See Vogt*, 963 F.3d at 771 (explaining that Rule 37(c) authorizes exclusion or a lesser sanction as the court deems appropriate).

Depositors did not depose Roza, however. Thus, the only disclosure of any opinions Roza might have on any of the topics in this Motion was in Millard Gutter's expert designations and an interrogatory response. Depositors did not have deposition testimony from Roza that would have provided factual information supporting Roza's opinions and that could have prompted Depositors to make a motion to compel more complete interrogatory answers as to Roza's opinions. Under these circumstances, exclusion of Roza's opinions on any of the topics is appropriate. *See* Fed. R. Civ. P. 37(c); *Vogt*, 963 F.3d at 771.

Millard Gutter has not identified any disclosures of expert opinions of Eggers, Roza, or any of the other listed witnesses pertaining to topics 2, 5, 6, 7, and 10. Millard Gutter's only response as to these topics is that the opinions of contractors developed in the course of the work on repairs related to the insurance claim at issue should be treated like the opinions of treating physicians. Filing 138 at 10–11. Millard Gutter cites an out-of-circuit district court decision in support of this contention, *Full Faith Church of Love W., Inc. v. Hoover Treated Wood Prod., Inc*., No. CIV.A. 01-2597-KHV, 2003 WL 169015, at *1–2 (D. Kan. Jan. 23, 2003). Millard also argues that experts who are testifying as fact witnesses are not subject to disclosure requirements for experts even if they may provide some opinion testimony because of their work experience and

history. Filing 138 at 10–11. In support of that contention, Millard Gutter cites another out-of-circuit district court decision, *Goodbys Creek, LLC v. Arch Ins. Co*., No. 3:07-CV-947-J-34HTS, 2009 WL 1139575, at *4 (M.D. Fla. Apr. 27, 2009). While these propositions are interesting, Millard Gutter has not cited any decisions from a district court in this Circuit or from the Eighth Circuit Court of Appeals suggesting that these propositions are accepted.

Moreover, case law from this Circuit indicates that before considering whether a sanction is appropriate pursuant to Rule 37(c), a court must first consider whether the evidence was "actually untimely disclosed expert materials" for which disclosure was required by Rule 26(a). *Vogt*, 963 F.3d at 771. Here, much as the Court concluded in its disposition of Millard Gutter's first Motion in Limine, the testimony that Depositors now seeks to preclude more likely than not requires scientific, technical, or other specialized knowledge to help the trier of fact understand the evidence or to determine some fact issues. Fed. R. Evid. 702. Likewise, "a layperson juror" would not be able to make a "common sense determination" of those issues "without the technical aid of an expert." *Cf. United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023) (explaining that if a layperson juror could do so, the expert evidence would be superfluous). A layperson juror is highly unlikely to understand without expert assistance the fairness, reasonableness, or appropriateness of the scope of work and the amount of money for each item of work, as set forth within the Weber Estimate (topic 2); whether all the HVAC units could be repaired in accordance with the report from First Point Consulting, LLC, whether any HVAC unit needed to be replaced, and whether the repairs as recommended by First Point Consulting, LLC, Grayco Roofing Consultants and Haag Engineering could or could not be performed for any reason to properly restore any HVAC unit (topic 5); or the appropriate measure of Actual Cash Value and/or Replacement Cost pertaining to Millard Gutter's claims for damages to the buildings insured by Depositors (topic 7). As to these topics, exclusion of testimony is an appropriate sanction.

On the other hand, the Court concludes that a layperson juror is likely to understand without the assistance of an expert the amount of damages pertaining to any category of damages other than amounts of damages identified in Millard Gutter's initial estimate (topic 6). The Court also concludes topic 10 concerning any testimony or evidence from Raul Mejia Rueda, Grambel, Kropf, and Robinson "that is opinion and/or expert in nature" is simply too vague a description of evidence to exclude pretrial. Lay opinion testimony is admissible within the limits of Federal Rule of Evidence 701. As to these topics, exclusion is not an appropriate sanction.

This part of Depositors' 3rd Motion in Limine is granted only as to testimony on topics 2, 5, and 7, but this part of the Motion is otherwise denied.

### c. The Opinions about an "Alternative Basis" for Repair Are Not "New" and Were Adequately Disclosed

Depositors asserts as its second argument for exclusion of evidence in its 3rd Motion in Limine—as to topics 3 and 4—that the Court should bar opinions from any witnesses (lay or expert) as to the repairability of the roof at Gillick Enterprises. Filing 116 at 7–8. Depositors argues that Millard Gutter asserted these opinions for the first time in James Eggers's declaration filed April 3, 2023. Filing 116 at 9. Millard Gutter contends that the pertinent opinions and the factual basis for them were revealed in Eggers's deposition. Filing 138 at 5–6. Millard Gutter also points to Martin's deposition as disclosing the pertinent opinions. Filing 138 at 7–8.

The Court concluded above that Eggers's and Martin's testimony on topics 3 and 4 will not be excluded. What remains is to reiterate briefly the Court's conclusion that opinions on topics 3 and 4 are not "new." In its ruling on Millard Gutter's Motion for Partial Summary Judgment, the Court rejected Depositors' argument that this "alternative basis for repair" was "new." Filing 133 at 11. The Court is no more persuaded by Depositors' arguments on that point the second time around.

This part of Depositors' 3rd Motion in Limine is denied.

15

d.   Summary

Depositors' 3rd Motion in Limine is granted only to the extent that the Court will bar testimony on topics 2, 5, and 7, because those topics require expert testimony, but Millard Gutter has not disclosed any experts to offer opinions on those topics. Depositors' 3rd Motion in Limine is otherwise denied.

3.   *The Fourth Motion in Limine to Strike Exhibits*

In its 4th Motion in Limine and Motion to Strike Plaintiffs' Exhibits, Depositors seeks an order excluding eight exhibits or groups of exhibits. Filing 117. The challenged exhibits are listed more succinctly in Depositors' supporting brief as follows:

1.   Exhibit No. 9 on Plaintiffs' Exhibit List – "Commercial Energy Codes"

2.   Exhibit No. 10 on Plaintiffs' Exhibit List – "DHHVAC Estimate"

3.   Exhibit No. 38 on Plaintiffs' Exhibit List – "Title 210 Nebraska Department of Insurance Rules"

4.   Exhibit Nos. 40-47 on Plaintiffs' Exhibit List

5.   Exhibit No. 48 on Plaintiff's [sic] Exhibit List – "List of Contractors with Omaha Nebraska Construction License"

6.   Exhibit Nos. 49 and 50 on Plaintiffs' Exhibit List – "Calculation of Prejudgment Invoices"

7.   Exhibit Nos. 77-122 on Plaintiffs' Exhibit List – "Photographs and Videos"

8.   Exhibit Nos. 123-126 on Plaintiffs' Exhibit List – "Demonstrative Exhibits"

Filing 118 at 1–2. Millard Gutter denies that any of these exhibits should be excluded on the grounds Depositors cites. Filing 139. In reply, Depositors argues that Millard Gutter "do[es] not appreciate the nature of [this Motion]." Filing 152 at 1.

The Court will consider the challenged exhibits or groups of exhibits in turn.

a. Depositors' Broad Challenge to Numerous Exhibits Is Unpersuasive

Depositors' first argument, and the argument reasserted in its reply—which apparently applies to all the challenged exhibits and is the only challenge to Exhibits 9, 10, 38, 48, 49, 50, 77–122, and 123–126—is that Millard Gutter failed to produce required expert witness disclosures for the challenged exhibits or to describe how the exhibits serve as factual bases for any expert opinions. Filing 118 at 2, 4–5; Filing 152 at 1 (asserting that Millard Gutter misses the point that its argument is that the exhibits were not produced with any accompanying witness disclosure setting forth the relevance or materiality of the exhibits to any issue or showing how they serve as bases for expert opinions). Millard Gutter argues generally that the Court should reserve ruling on the admissibility of the challenged exhibits until the Court has seen the context in which the exhibits are offered and the foundation testimony that is offered for them. Filing 139 at 1. Depositors replies that all the exhibits are hearsay and that it will be prejudiced by the failure to disclose them with expert disclosures. Filing 152 at 2.

The Court is not persuaded that the challenged exhibits are intended to support or necessarily must be disclosed in relation to expert testimony. Depositors has not shown that it is more likely than not that understanding these exhibits requires scientific, technical, or other specialized knowledge to help the trier of fact understand the evidence or to determine a fact issue in them. *See* Fed. R. Evid. 702. Indeed, it is not clear to the Court that the challenged exhibits are necessarily intended to support expert opinions rather than merely to show facts. Thus, Millard Gutter is correct that context may matter, including the purpose for which the exhibits are used at trial and whether Millard Gutter can lay an adequate foundation for them without an expert.

For example, Exhibit 9 is a printout of Chapter 5 of the International Energy Conservation Code on Commercial Energy Efficiency, such that it may be permissible for the Court to take judicial notice of this official internationally promulgated code. *Cf. Stahl v. U.S. Dep't of Agric.,*

327 F.3d 697, 700 (8th Cir. 2003) (explaining that a district court may take judicial notice of public records, including regulations of a governmental department). A layperson juror may be able to make common sense determinations, for example, that certain R values are required by this code in certain circumstances, even if a layperson juror might otherwise lack the specialized knowledge to understand the impact of R values. *See* Fed. R. Evid. 702. If Exhibit 10 is properly authenticated, a layperson juror can also understand the dollar amounts shown in Exhibit 10, which is a "proposal" from D& H Heating – Air Conditioning – Refrigeration for "roof top equipment and fans" at the insured site and such a juror can make a common sense comparison of those dollar amounts to amounts charged by Millard Gutter, even if a layperson juror might require the assistance of expert testimony to determine the "reasonableness" of other aspects of repair charges and what a contractor would do under the circumstances presented in this case. *See, e.g.,* Filing 108 at 7 (suggesting that some kinds of testimony might require expert disclosures because a layperson juror is highly unlikely to understand the issues or make determinations of the reasonableness of certain work and charges and various other matters in this case). Although the Court is unable to verify whether Exhibits 9 and 10 were produced in discovery from the information Millard Gutter has provided, *see* Filing 139 at 2, the Court will reserve judgment on that issue until trial.

As to Exhibit 38, which sets out Title 210 of regulations of the Nebraska Department of Insurance, 210 Neb. Admin. Code, Ch. 60, it is also not clear to the Court that any connection to expert testimony is required to introduce this code of regulations into evidence and it is also admissible to show a duty. *See Segal v. Metro. Council*, 29 F.4th 399, 405–06 (8th Cir. 2022) (explaining that a government department's regulations are admissible evidence that the jury may consider when determining whether a plaintiff has met its burden to demonstrate the defendant's violation of a duty); *Stahl*, 327 F.3d at 700 (explaining that a district court may take judicial notice

18

of public records, including regulations of a governmental department). Millard Gutter is also correct that the Court already concluded that this information is relevant, albeit after Depositors' present Motion was filed. Filing 139 at 2. In its ruling on the parties' summary judgment motions, the Court concluded that Millard Gutter is not asserting a private cause of action based on a violation of these regulations, as Depositors previously argued, *see* Filing 90 at 8; rather, the Court explained, the regulations are relevant to an insurers' duties under an insurance contract. Filing 133 at 9–10.

Millard Gutter contends that Exhibit 48, which is a "List of Contractors with Omaha Nebraska Construction License," is a public record available to anyone. Filing 139 at 3. The Court agrees. *See Stahl*, 327 F.3d at 700. Furthermore, nothing about this list required "expert" disclosure or support. *See* Fed. R. Evid. 702.

Exhibit 49 is identified in Millard Gutter's Exhibit List as "Calculation of Prejudgment Invoices June 4, 2020, through August 8, 2023," while Exhibit 50 is identified as "Calculation of Prejudgment Interest February 10, 2022, through August 8, 2023." Millard Gutter argues that these exhibits are "demonstrative" and may change depending on rulings by the Court (such as the summary judgment ruling). It remains to be seen whether these exhibits are proper "demonstrative" exhibits, that is, "meant to illustrate or clarify a party's position." *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 707 (7th Cir. 2013) (internal quotation marks and citations omitted). More specifically, "labeling an exhibit 'demonstrative' signifies that the exhibit is not itself evidence—the exhibit is instead a persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury." *Id*. at 706. If used only as "demonstrative" exhibits, these Exhibits will not be admitted into evidence. *Id.* The question is whether they will be shown to the jury at all.

While the Court concludes that Exhibits 49 and 50 are not excludable on the grounds identified by Depositors, they will not be admitted for the jury's consideration. None of the authority Millard Gutter cited in support of a jury instruction on prejudgment interest stands for the proposition that an award of prejudgment interest is an issue for the jury rather than for the Court. Neb. Rev. Stat. § 45-104 does not say who awards prejudgment interest. *Weyh v. Gottsch*, 929 N.W.2d 40, 45 (Neb. 2019), was an appeal after a bench trial. Although *AVG Partners* was a jury trial case, the court entered judgment on the jury's verdict and "further" awarded prejudgment interest. *AVG Partners I, LLC v. Genesis Health Clubs of Midwest, LLC*, 948 N.W.2d 212, 223 (Neb. 2020). Similarly, *BCL Properties* was tried in part to a jury and in part to the court, but after the jury verdicts were accepted, the plaintiff moved for an award of prejudgment interest, which the court then awarded. *BCL Properties, Inc. v. Boyle*, 992 N.W.2d 440, 445 (Neb. 2023). Moreover, prejudgment interest awards are reviewed *de novo*, *see BCL Properties*, 992 N.W.2d at 446; *AVG Partners*, 948 N.W.2d at 224, while a jury's verdict is reviewed by viewing the evidence in the light most favorable to the jury's verdict. *See State v. Matteson*, 985 N.W.2d 1, 13 (Neb. 2023). Thus, Depositors' 4th Motion in Limine is granted as to Exhibits 49 and 50, but only as to admissibility in the jury trial. These Exhibits may be properly considered by the Court to determine prejudgment interest, if such a determination becomes appropriate. The Court will reconsider this part of its ruling if Millard Gutter offers controlling authority showing that prejudgment interest is a question for the jury.

The Court also agrees with Millard Gutter that Exhibits 77–122, which are "Photographs and Videos," are admissible, assuming that Millard Gutter can demonstrate that they have been produced to Depositors during this litigation and can otherwise establish foundation for them. Filing 139 at 3. The Court agrees that if these requirements are met, no expert disclosure was required for the photos and videos, although expert testimony may be required to explain the

specific import of what layperson jurors can see with their own eyes. Ruling is reserved on admissibility until after Millard demonstrates that the exhibits were produced to Depositors and attempts to lay the proper foundation.

Depositors also challenges Exhibits 123–126, which Millard Gutter asserts are "demonstrative exhibits." These Exhibits are described in Millard Gutter's Exhibit List as materials salvaged from the damaged property, specifically, EPDM, river rock ballast, "metal," and "HVAC Metal Installed at Gillick Enterprises." The Court has discretion to allow such visual aids to be used to illustrate an expert's testimony. *Bradshaw v. FFE Transp. Servs.*, Inc., 715 F.3d 1104, 1109 (8th Cir. 2013). If such demonstrative exhibits are offered and if Millard Gutter is allowed to use them, the Court will instruct the jury that the experts' testimony is evidence, while the demonstrative exhibits are not substantive evidence, and the Court will presume the jury will follow such a limiting instruction. *Id.* These Exhibits will not themselves be admitted into evidence. Owing to the nature of these "visual aids," even though they purportedly have not been disclosed with expert testimony, Depositors has not articulated what, if any, impact earlier disclosure would have had on Depositors' trial preparations. *See id.* at 1109–1109 (explaining that it need not decide if demonstrative exhibits, consisting of medical drawings, required disclosure under Rule 26(a)(2), where the opponent did not properly articulate the objection). This part of Depositors' 4th Motion in Limine granted as to admission of Exhibits 123–126 although these "visual aids" or "demonstrative exhibits" may be shown to the jury.

### b. Exhibits 40–47 Are Not "Settlement Documents" Excludable under Rule 408

Next, Depositors argues that Exhibits 40–47 are a series of documents concerning settlement discussions that began at mediation, so they are precluded from evidence pursuant to Federal Rule of Evidence 408. Filing 118 at 3. Millard Gutter responds that these Exhibits do not involve settlement discussions, make no reference to any dollar offers, and instead reflect repeated

requests made to Depositors to come to the site and inspect the Property, which Depositors ignored. Filing 139 at 2.

It is simply not enough that communications were made in the context of settlement discussions to make them excludable pursuant to Federal Rule of Evidence 408, as Depositors seems to suggest. Rather, the Rule provides that "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" or "conduct or a statement made during compromise negotiations" is not admissible on behalf of any party "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Here, again, context is key. Millard Gutter asserts that it will not offer these Exhibits for a prohibited purpose, but only for "another purpose," specifically, to show that Millard Gutter repeatedly requested that Depositors come to the site and inspect the Property, which Depositors ignored.

The Court finds that this evidence is relevant to whether Depositors breached a duty to pay for consequential damages from authorized repairs. Filing 139 at 2. If offered for the purpose Millard Gutters states or for "another purpose" not prohibited by Rule 408, these Exhibits are admissible, and Depositors' 4th Motion in Limine to exclude them is denied. Nevertheless, it is appropriate to require Millard Gutter to redact from these Exhibits any language alluding to attempts to settle the case, such as the reference on the first page of Exhibit 40 to "and the recent mediation."

c.   Summary

Depositors' 4th Motion in Limine is denied as to Exhibits 9, 10, 38, 40–47, 48. The Motion is granted as to use during the jury trial of Exhibits 49 and 50. The Motion is also granted as to admission of Exhibits 123–126 although these "visual aids" or "demonstrative exhibits" may be shown to the jury. Finally, ruling on this Motion is reserved as to Exhibits 77–122.

4.   *Depositors' Motion in Limine to Exclude Carl Martin as a Witness and to Strike His Affidavit Is No More Persuasive than It Was the First Time*

Carl Martin, P.E., has been disclosed as an expert for Millard Gutter and also named in Millard Gutter's list of witnesses in the Order on Final Pretrial Conference. Filing 110 at 4. In its Motion in Limine and Motion to Strike Carl Martin, P.E., as a Witness and to Strike Portions of Affidavit of Carl Martin, P.E., Depositors argues that in a letter dated November 1, 2017, written by Martin to Millard Roofing, listed as Plaintiffs' Exhibit 14, Martin clearly stated that he did not do impact studies using ballast, thus contradicting his prior deposition testimony and several paragraphs of a subsequent affidavit. Filing 119 at 4–5. Consequently, Depositors asks the Court to strike Martin as a witness, preclude Millard Gutter from offering any evidence or testimony that Martin purportedly used ballast in his testing, and strike various paragraphs from Martin's affidavit as inaccurate and misleading. Filing 119 at 5. Millard Gutter points out that Depositors did not file a brief in support of this Motion. Filing 140 at 1. Millard Gutter argues further that the Court has already considered and rejected Depositors' argument about Martin contradicting himself. Filing 140 at 5. In its Reply, Depositors disputes that a brief was required in support of this Motion because determination by the Court does not raise a "substantial issue" requiring briefing. Filing 150 at 2. Instead, Depositors argues, its Motion requires a review of Martin's disclosures, testimony, and writings provided prior to submitting his Affidavit, Filing 96-1, on April 26, 2023. Filing 150 at 2. Depositors also argues for several pages why it contends that Martin's testimony about his testing is inaccurate and misleading in light of the letter. Filing 150 at 2–7.

The Court agrees with Millard Gutter that Depositors' Motion is improper because it is not supported by a brief as required for a motion raising a substantial issue of law under the applicable local rules. *See* NECivR 7.1(a). The length of Depositors' reply brief only confirms the Court's conclusion that this Motion raised a substantial issue of law or at the very least an issue that warranted argument to demonstrate circumstances sufficient to support the sanction of exclusion of an expert's testimony.[6] However, even taking Depositors' reply brief into consideration, the Court concludes that this Motion should be denied for substantive reasons.

Millard Gutter is correct that in Depositors' prior Motion in Limine, Depositors argued, *inter alia*, that Martin's testing was unreliable because he omitted the ballast layer of the roof in question, Filing 77 at 13, but the Court rejected that argument. The Court concluded that Depositors' challenges to the factual basis for Martin's opinions that Depositors had raised "properly go to the credibility of Martin's testimony not the admissibility." Filing 108 at 12. The Court explained further that while "[i]t is true that [Depositors] has identified grounds to impeach or challenge Martin's expert opinions," the Court found "that this is an example of a case in which '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means' of addressing Martin's expert testimony." Filing 108 at 13 (quoting *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021) (in turn quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)), *cert. denied sub nom. 3M Co. v. Amador*, 142 S. Ct. 2731 (2022)).

Depositors' belated realization that some additional evidence may, but does not unequivocally, show that Martin did no testing with ballast and has contradicted himself, does not change the Court's prior conclusion. Depositors is welcome to impeach or cross examine Martin

---

[6] The Court finds that waiting to brief the issue until after Millard Gutter filed its opposition brief was arguably "sandbagging."

with his letter dated November 1, 2017, but the Court will not exclude Martin's testimony pretrial. Moreover, Millard Gutter has not identified Martin's declaration as an exhibit in this case, so there is no reason to strike any paragraphs of that affidavit.

Depositors' Motion in Limine and Motion to Strike Carl Martin, P.E., as a Witness and to Strike Portions of Affidavit of Carl Martin, P.E., is denied.

### B. Millard Gutter's Motions in Limine

The Court turns now to Millard Gutter's three Motions in Limine filed in this round of pretrial motions. The Court will consider these Motions in turn.

#### 1. *The Motion to Exclude Plaintiff's Discovery Responses*

In its Motion in Limine (Plaintiffs' Discovery Responses), Millard Gutter seeks to exclude Defendant's Exhibits 201, 202, 203, 204, 205, 206, 207, 208, 209, 264, and 265, which are discovery responses from all three Plaintiffs. Filing 120 at 1. Millard Gutter argues that offering all Plaintiffs' discovery responses violates at least the spirit of the Court's Civil Jury Trial Deadlines and Practices. Filing 121 at 1. Millard Gutter argues further that simply offering all of the discovery responses that Plaintiffs submitted in this litigation is not offering "relevant evidence," so these discovery responses should be excluded pursuant to Federal Rules of Evidence 401 and 402. Filing 121 at 2. Millard Gutter argues that the discovery responses also are not the best evidence and may be incomplete. Filing 121 at 2. Millard Gutter also argues that the potential for confusion, waste of time, and the cumulative nature of offering these discovery responses in their entirety violates Federal Rules of Evidence 403. Filing 121 at 2. Millard Gutter then makes more specific objections as to specific exhibits. Filing 121 at 2–7.

Depositors counters that the Court's Civil Jury Trial Deadlines and Practices, § I.F., does not limit the number of discovery requests that can be offered into evidence or preclude Depositors' identification of the responses. Filing 135 at 1–2. Depositors also argues that the

discovery responses are relevant to its affirmative defenses, specifically, to demonstrate that Gillick and Gross Point have failed to provide requested information thus failing to satisfy their duties in event of loss or damage under the insurance policy at issue and overcoming Millard Gutter's objections based on Rules 401, 402, and 403. Filing 135 at 2–3. Depositors expresses its confidence that the Court may determine at some point that such evidence is cumulative, but Depositors argues that it is not otherwise prejudicial. Filing 135 at 3. Depositors also argues that the discovery responses are admissible over hearsay objections even if they are not "admissions" because they are still "statements" of an opposing party within the meaning of Federal Rules of Evidence 804(b)(3) and 801(a) and they are statements made in an individual or representative capacity within the meaning of Federal Rule of Evidence 801(d)(2). Filing 135 at 4.

The Court concludes that responses to discovery requests in litigation are not relevant to an insured's obligation to cooperate with an insurer in adjustment of the underlying insurance claim. The "cooperation clause" at issue here states, "You must see that the following are done in the event of loss . . . (7) Cooperate with us in the investigation or settlement of the claim." Filing 8-1 at 59; Defendant's Exhibit 200 at 61. Cooperation in "the investigation or settlement of the claim" does not plainly or reasonably encompass providing any information requested in discovery during a lawsuit—even assuming the specific insured has such information. Furthermore, Millard Gutter was not subject to the "cooperation clause" because Millard Gutter did not (and as a matter of Nebraska law cannot) step into the shoes of the insureds by virtue of an assignment of less than the entirety of the insureds' claims. An insured can validly assign a post-loss breach of contract claim for insurance proceeds. See *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 430 (Neb. 2022) (explaining that in the absence of a statute to the contrary, an insured may validly assign a post-loss breach of contract claim for proceeds, and the assignee has standing to sue for breach of contract in its own name). However, that is because "the indemnity policy is no longer

26

an executory contract of insurance [but rather] a vested claim against the insurer." *Id.* The assignment does not obligate the assignee to comply with terms of the policy, although the insureds must do so because they have not assigned that obligation. *See id.* at 434 (explaining that a post-loss assignment by an insured does not create a contractual relationship between the insurer and the assignee, even if the assignment of the right to proceeds allows the assignee to sue for breach of contract); *see also Millard Gutter Co. v. Cont'l Cas. Co.*, 9 F.4th 711, 713 (8th Cir. 2021) (relying on *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 889 N.W.2d 596, 605 (Neb. 2016), and *Valley Boys, Inc. v. Allstate Ins. Co.*, 66 F. Supp. 3d 1179, 1881–82 (D. Neb. 2014), to conclude that an assignment of insurance proceeds and the authority to negotiate payment with the insurer did not assign the entire claim).

Even if the discovery responses are somehow relevant and otherwise admissible, however, the discovery responses at issue here are properly excluded pursuant to Federal Rule of Evidence 403. Even if evidence is otherwise relevant and admissible, "Federal Rule of Evidence 403 . . . permits the district court to exclude [it] 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Dozier*, 31 F.4th 624, 628 (8th Cir.) (quoting Fed. R. Evid. 403), *cert. denied*, 143 S. Ct. 237 (2022). The offer of the discovery responses *en masse* is likely to confuse the jurors as to the issues on which any or some part of those responses might be relevant and that *en masse* offer is likely to be needlessly cumulative of the testimony or the documents actually produced, authenticated, offered, and admitted that form the proper evidentiary basis for determination of the issues in this case.

These conclusions make it unnecessary for the Court to consider separately the admissibility the challenged exhibits, as essentially the same Rule 401, 402, and 403 analysis applies to each exhibit. Millard Gutter's Motion in Limine (Plaintiffs' Discovery Responses) is

granted and Defendant's Exhibits 201, 202, 203, 204, 205, 206, 207, 208, 209, 264, and 265 will not be admitted at trial.

### 2. The Motion in Limine to Exclude Certain Opinions and Evidence Regarding the General Contractor and Subcontractors

In its next Motion, Millard Gutter's Motion in Limine (Subcontractor/Supplier Charges/Proposal/Estimates), Millard Gutter seeks to exclude various kinds of information from or about subcontractors. Filing 123. Millard Gutter identifies the information in question as follows:

1. Any argument, reference, testimony or evidence as to fair and reasonable charges of a contractor performing work in Omaha, Nebraska, including any testimony or evidence that Millard Gutter's invoiced charges were not fair and reasonable in amount as to the work performed.

2. Any argument, reference, testimony or evidence concerning what any of Millard Gutter's subcontractors or suppliers charged or any estimates by any subcontractors or suppliers prior to work commencing.

3. Specifically, Plaintiffs' object to any reference to Defendants' Exhibits 223, 224, 240, 241, 242, 243, 244, 245, 247, and 248, related to proposed charges or charges from one subcontractor that worked on the project. . . .

Filing 123 at 1–2; Filing 124 at 1–2 (omitting argument from topic 3).

Millard Gutter argues that these Exhibits and any related testimony should be excluded under Rule 402 as irrelevant or under Rule 403 as more prejudicial than probative. Filing 123 at 2. Somewhat more specifically, Millard Gutter argues that the charges billed to Gillick and Gross Point are at issue, not subcontractor or supplier charges, because what was billed to Gillick and Gross Point is the measure of damages for breach of contract. Filing 124 at 2. Millard Gutter argues that "replacement cost" under the policy means the replacement cost to the insured, not to the general contractor (Millard Gutter Company) that did the work. Filing 124 at 2. Millard Gutter argues next that Depositors has not identified any expert witness to challenge the fairness or reasonableness of the charges invoiced by Millard Gutter and that this Court has already held on

28

the first round of motions in limine that a layperson juror is highly unlikely to understand what are fair and reasonable charges of a contractor performing work in Omaha, Nebraska. Filing 124 at 3. Millard Gutter adds that no expert has been identified by Depositors to offer an opinion on the fairness or reasonableness of Millard Gutter's charges for the work performed for Gillick and Gross Point. Filing 124 at 3. Millard reiterates that Millard Gutter, like Depositors, used Xactimate software for its pricing for repairs. Filing 124 at 4. Millard Gutter contends that even if somehow relevant, the probative value of the challenged evidence is outweighed by its potential for prejudice and confusion. Filing 124 at 9.

Depositors disputes both Millard Gutter's "relevance" argument and its "prejudice" argument. Contrary to Millard Gutter's contentions, Depositors argues that relevant evidence includes sorting out which work was actually performed by subcontractors, as opposed to direct employees of Millard Gutter; the scope of work described in subcontractor's bid proposals compared with work Millard Gutter claims was performed and for which it seeks to charge Gillick and Gross Point, and hence their insurer, Depositors. Filing 136 at 1. Depositors asserts that such evidence is relevant to the jury's review of Millard Gutter's charges for "overhead and profit." Filing 136 at 1. Depositors also argues that a jury may compare the charges by the subcontracts that actually performed repairs and replacement at the Property, weigh their charges against what Millard Gutter charged Gillick and Gross Point, and then decide whether the scope of the work Millard Gutter billed for and the amounts billed were necessary to repair or replace any damaged property. Filing 136 at 2. Depositors also argues that Millard Gutter asserts rights under the contract as the assignee of the insureds, so that Millard Gutter is required to meet all the conditions, duties, and other terms of the contract. Filing 136 at 7. Consequently, Depositors argues, to the extent that the subcontractor information is material to Depositors' investigation and settlement of the claim, that information is relevant to the jury's determination of whether all Plaintiffs have

complied with conditions of the contract. [Filing 136 at 7](#). As to "prejudice," Depositors argues that Millard Gutter has not stated how it would be prejudiced by presentation of evidence about what Millard Gutter's subcontractors or suppliers estimated or charged. [Filing 136 at 8](#).

In reply, Millard Gutter argues that Depositors offers no evidence or authority suggesting it is appropriate to examine selected subcontractor and supplier charges to determine whether the scope of the work and amounts billed were necessary. [Filing 153 at 2](#).

The Court will consider the admissibility of evidence on the challenged topics in turn.

a.   Topic 1 Requires Expert Testimony Only in Part

Topic 1 in this Motion is precisely the same as the first topic Millard Gutter sought to exclude in its first Motion in Limine, [Filing 73](#). In Millard Gutter's prior Motion, Millard limited its argument to exclusion of "expert" testimony. *See* [Filing 74 at 4](#)–5. As to that topic in Millard Gutter's prior Motion, the Court concluded that expert disclosures were required to the extent that "[a] layperson juror is highly unlikely to understand what are fair and reasonable charges of a contractor performing work in Omaha, Nebraska." [Filing 108 at 7](#). The Court took no position on whether expert testimony was required on whether "Millard Gutter's invoiced charges were not fair and reasonable in amount as to the work performed." *See generally* [Filing 108](#). The Court ultimately denied Millard's first Motion in Limine because "[t]here simply [we]re no 'late-disclosed materials' on those topics that the Court could exclude at trial pursuant to Rule 37(c)." [Filing 108 at 8](#) (citing *Vogt*, 963 F.3d at 771).

Topic 1 in this Motion is also precisely the same as topic 1 in Depositors' 3rd Motion in Limine, [Filing 115](#). No disclosures are required for lay opinion testimony under Rule 26. However, as to topic 1 in Depositors' 3rd Motion in Limine, it was unnecessary for the Court to distinguish between expert and lay testimony where the Court concluded that exclusion of "expert" testimony

30

on the topic was not required as a sanction for failure to disclose it as a topic for experts. *See, supra*, § II.A.2.b.

Millard Gutter's present Motion does require the Court to consider lay opinions on topic 1 because Millard Gutter seeks to preclude "any argument, reference, testimony or evidence, including but not limited to any from any of the Defendants' purported experts, as to" topic 1 and the other topics in the Motion. Filing 115 at 1. Millard Gutter's argument again focuses on precluding "expert" testimony on the topic for failure to disclose an expert. *See* Filing 116 at 3–4. Nevertheless the Court will take this opportunity to point out that while what are "fair and reasonable charges of a contractor performing work in Omaha, Nebraska," requires expert testimony, that is in part because it is framed as a general issue, apparently encompassing any work by any contractor in Omaha. On the other hand, whether "Millard Gutter's invoiced charges were not fair and reasonable in amount as to the work performed" is a specific question dealing with Millard Gutter's charges for work on a particular job, that is, repair and replacement of the EPDM roof at the Property. The Court concludes that "a layperson juror" would be able to make a "common sense determination" of that issue "without the technical aid of an expert." *See United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023) (explaining that if a layperson juror could do so, the expert evidence would be superfluous). For example, even a layperson juror would be able to determine the scope of work and the estimated cost in proposals by subcontractor as well as the scope of work performed and the amount billed for it by a subcontractor who actually performed the work. A layperson juror could then compare the subcontractors' scope of work and amounts billed to the amounts charged by Millard Gutter and decide whether the charges invoiced by Millard Gutter were fair and reasonable in amount as to the work performed and, indeed, whether the scope of work for which Millard Gutter invoiced charges was necessary. Because expert testimony is not required, lay opinions may also be relevant on this part of topic 1.

This Motion is granted as to the part of topic 1 requiring expert testimony, but not as to the part of topic 1 not requiring expert testimony.

        b.   Evidence on Topic 2 Is Relevant and Admissible

Topic 2 on which Millard Gutter seeks to exclude evidence is "what any of Millard Gutter's subcontractors or suppliers charged or any estimates by any subcontractors or suppliers prior to work commencing." Filing 123 at 1. The Court explained just above that such evidence is relevant to topic 1. It is true that in its ruling on summary judgment, the Court observed in a footnote that it "ha[d] considerable doubt that the information about Millard [Gutter]'s own invoicing from its subcontractors and Millard [Gutter]'s internal expenses that Depositors now asserts it must be given is relevant to the determination of '[t]he amount actually spent that is necessary to repair or replace the lost or damaged property' within the meaning of the 'replacement cost basis' provision of the policy." Filing 133 at 24 n.3 (citing Filing 82-1 at 56). That aside was mentioned in the context of a dispute about whether a reasonable jury could find that the insureds—Gillick and Gross Point who the Court found were the only parties required to "cooperate" with Depositors under the contract—timely provided necessary information to fulfill the cooperation requirement under the policy. Filing 133 at 24. It was also in the still more specific context of the meaning of "actually spent" in the "replacement cost" provision. *See* 133 at 26. That context was limited. While only the amount invoiced by Millard Gutter to Gillick and Gross Point is relevant to what was "actually spent," it is now clear to the Court that what any of Millard Gutter's subcontractors or suppliers charged or any estimates by any subcontractors or suppliers prior to work commencing is relevant to the question of what amounts actually spent were "necessary" to repair and replace the lost or damages property. *See* Filing 82-1 at 56. In other words, what was "necessary" to be spent is not necessarily what Millard Gutter invoiced.

        This Motion is denied as to topic 2.

c.   The Exhibits Identified in Topic 3 Are Admissible

Topic 3 of this Motion identifies particular exhibits to which Millard Gutter objects—Defendants' Exhibits 223, 224, 240, 241, 242, 243, 244, 245, 247, and 248—as they relate to proposed charges or charges from one subcontractor that worked on the project. Filing 123 at 1. For the reasons explained above, the Court concludes that these exhibits are indeed relevant to matters in dispute in this case, contrary to Millard Gutter's contentions.

The Court also is not persuaded by Millard Gutter's argument that these Exhibits were never identified by any insurer as any basis for the denial of any payment by the insurer. Filing 123 at 1. In support of this contention, Millard Gutter cites *From v. Gen. Am. Life Ins. Co*., 273 N.W. 36, 36 (Neb. 1937). The pertinent part of the decision states the following:

> After it had paid disability benefits for a period of 15 months, defendant discontinued the payments and gave as the only reason for the discontinuance that insured was not totally and permanently disabled, and did not claim that the cause of his disability originated prior to the issuance of the policy or the payment of the first annual premium. It has long been a rule in this jurisdiction that, "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold." *Mitchell v. Brotherhood of Locomotive Firemen and Enginemen*, 103 Neb. 791, 174 N.W. 422, 423; *Hamblin v. Equitable Life Assurance Society*, 124 Neb. 841, 248 N.W. 397; *Pittenger v. Salisbury & Almquist*, 125 Neb. 672, 251 N.W. 287; *McDowell v. Metropolitan Life Ins. Co*., 129 Neb. 764, 263 N.W. 145; *Ballou v. Sherwood*, 32 Neb. 666, 49 N.W. 790, 50 N.W. 1131; *Powers v. Bohuslav*, 84 Neb. 179, 120 N.W. 942.

*From*, 273 N.W. at 39. The Court finds this principle inapplicable here, however. Depositors has always taken the position that it was not required to pay more than the amount in the Weber Estimate on the claim by Gillick and Gross Point because the Weber Estimate showed the appropriate scope of work and cost. The fact that Depositors now intends to use evidence that subtractors submitted estimates and invoices that were lower than Millard Gutter charged does not change the basis for the refusal to pay the claim up to the amount of Millard Gutter's demand because the Weber Estimate was correct. Furthermore, Depositors has never denied the claim;

Depositors contends that it has already issued payments of $736,531.95 on the claim on an actual cash value basis. *See* Filing 75 at 12.

The Motion is denied as to topic 3.

> d.   Summary

Millard Gutter's Motion in Limine (Subcontractor/Supplier Charges/Proposal/Estimates) is granted in part and denied in part. The Motion is granted as to the part of topic 1 requiring expert testimony. It is denied as to the part of topic 1 not requiring expert testimony and is denied as to topics 2 and 3.

> *3.   The Motion to Exclude David Heller's Testimony*

The last Motion in Limine before the Court in this round of such motions is Millard Gutter's Motion in Limine (David Heller). Filing 126. In support of this Motion, Millard Gutter argues that Depositors should be precluded from calling David Heller at trial because Depositors failed to make Heller available for deposition and did not disclose his address. Filing 127 at 1. Somewhat more specifically, Millard Gutter argues that it made oral and written requests to depose Heller, but Depositor failed to produce Heller for a deposition even though he was an employee of Nationwide, Depositors' affiliate and a former co-defendant in this case. Filing 127 at 1. Millard Gutter asserts that Depositors claimed that Heller had left Nationwide's employment and after promising to contact Heller about a deposition, and having designated him as an expert, Depositors never supplied a date for the deposition. Filing 127 at 1–2. Millard Gutter also argues that even if Depositors is allowed to call Heller, any expert testimony from him should be limited. Filing 127 at 2. This is so, Millard Gutter contends, because "[t]he expert disclosure for Heller is so narrow and lacking in detail that it provides absolutely no basis to understand the topics upon which he may offer expert testimony." Filing 127 at 2.

Depositors responds that Millard Gutter mischaracterizes the exchanges between the parties as to scheduling the deposition of Heller. Filing 143 at 1. Depositors argues that it notified Millard Gutter that Heller was no longer employed by Depositors or Nationwide and that Depositors had little to no ability to produce him for a deposition. Filing 143 at 1. Depositors contends that this is similar to the response Millard Gutter gave when Depositors asked to depose Josh Roza. Filing 143 at 1. Email exchanges occurred after Millard Gutter informed Depositors in November 2022 that it would subpoena Heller for a deposition in December of 2022. Filing 143 at 2–3 (identifying Filing 144 as the pertinent email communications). Depositors points out that it disclosed Heller in its Initial Disclosures and Expert Designations, but Millard Gutter never served any written discovery on Depositors concerning him. Filing 143 at 2.

The email exchange Depositors cites indicates that on November 18, 2022, Depositors counsel informed Millard Gutter's counsel by email that he had left a voicemail for David Heller adding that counsel was "hopeful" that he would get a response from Heller early the next week. Filing 144-1 at 1. The record does not indicate who is most to blame for Millard Gutter's lack of a deposition of Heller, but the record certainly does not show that Depositors promised to make Heller available for a deposition; it shows only that Depositors did try to contact Heller about a deposition. Filing 144-1. At that point, it appears that Millard Gutter let the matter drop for over a year-and-a-half. Certainly, Millard Gutter has offered no evidence that it contacted Depositors again about deposing Heller or followed up on whether Heller had subsequently been in contact with Depositors. The Court will not exclude Heller's testimony on the ground that Depositors failed to set up his deposition.

On the other hand, Depositors' disclosure of Heller in its Expert Witness Designation is even more scant than Millard Gutter's initial disclosure of Eggers discussed above. Filing 25 at 2–3. Depositors' disclosure states,

David C. Heller, AIC, One Nationwide Gateway, 5574 Des Moines, IA 50391

Defendants anticipate that Mr. Heller may provide testimony which may be deemed expert in nature based upon his specialized training, knowledge and experience as a commercial general adjuster in the insurance industry. Mr. Heller is anticipated to provide testimony that Defendants reasonably investigated and adjusted the claims that form the basis of Plaintiffs' action.

Filing 25 at 2–3. This is an inadequate disclosure even for an expert who was not required to provide a report because he was not retained or specially employed. *See* Fed. R. Civ. P. 26(a)(2)(C). The Court concludes that Millard Gutter is familiar with Heller and his likely opinions where he was the adjuster on this insurance claim. Under these circumstances, the Court concludes that exclusion of this witness or any other lesser sanction pursuant to Rule 37(c) would be inappropriate. *See Vogt*, 963 F.3d at 771 (explaining that Rule 37(c) authorizes exclusion or a lesser sanction as the court deems appropriate).

Millard Gutter's Motion in Limine (David Heller) is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      Depositors' 2nd Motion in Limine, Filing 111, is granted as to Tony Gillick and Davoid Hodges, but it is denied as to Pat Querry, Mike Herring, and Robert Robinson without prejudice to objection if the testimony of these three witnesses strays into areas or opinions that Depositors contends specifically required pretrial disclosure;

2.      Depositors' 3rd Motion in Limine, Filing 115, is granted only to the extent that the Court will bar testimony on topics 2, 5, and 7, but it is otherwise denied;

3.      Depositors' 4th Motion in Limine, Filing 117, is denied as to Exhibits 9, 10, 38, 40–47, 48, granted as to use during the jury trial of Exhibits 49 and 50, granted as to admission of

Exhibits 123–126 although these "visual aids" or "demonstrative exhibits" may be shown to the jury, and ruling is reserved as to Exhibits 77–122;

4.      Depositors' Motion in Limine and Motion to Strike Carl Martin, P.E., as a Witness and to Strike Portions of Affidavit of Carl Martin, P.E., Filing 119, is denied;

5.      Millard Gutter's Motion in Limine (Plaintiffs' Discovery Responses), Filing 120, is granted and Defendant's Exhibits 201, 202, 203, 204, 205, 206, 207, 208, 209, 264, and 265 will not be admitted at trial;

6.      Millard Gutter's Motion in Limine (Subcontractor/Supplier Charges/Proposal/ Estimates), Filing 123, is granted as to the part of topic 1 requiring expert testimony, but it is denied as to the part of topic 1 not requiring expert testimony, and it is denied as to topics 2 and 3; and

7.      Millard Gutter's Motion in Limine (David Heller), Filing 126, is denied.

Dated this 4th day of August, 2023.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge